IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM MURPHY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| UNITED FINANCIAL CASUALTY COMPANY | : | NO. 15-4199 |
| | : | |

MEMORANDUM

Dalzell, J.                                                                                                        April 18, 2016

**I.     Introduction**

We consider here defendant United Financial Casualty Company's ("United") motion for summary judgment.[1]

William Murphy ("Murphy") brings this action against United asserting a claim for bad faith.[2] This matter arose from a dispute between the parties over the valuation of Murphy's underinsured motorist ("UIM") benefits claim. Murphy was injured in a car accident in 2011, at which time he was insured by United. He avers that United's refusal to settle his UIM claim amounts to bad faith under Pennsylvania law.

We have diversity jurisdiction pursuant to 28 U.S.C. § 1332.

---

[1] There are three other motions pending in this matter -- plaintiff's motion to compel and his motion for leave to file a sur-reply and defendant's motion to strike, and we rule on them in our Order attached to this Memorandum as follows: First, we will deny Murphy's motion to compel as the parties have conducted substantial discovery and there are no outstanding discovery issues that preclude the Court's disposition of the motion for summary judgment. Second, we will grant Murphy's motion for leave to file a sur-reply, even though doing so is against our usual practice and, arguably, inconsistent with Fed. R. Civ. P. 56(e). But we find that Murphy's attempt to rectify his deficient response to United's motion through his sur-reply fails nonetheless. Finally, we will grant United's motion to strike several exhibits from the docket.

[2] Murphy's complaint also alleged breach of contract, but the parties settled that claim.

For the reasons set forth below, we will grant United's motion for summary judgment and enter judgment in favor of United and against Murphy.

## II.  Legal Standard

Parties may move for summary judgment pursuant to Fed. R. Civ. P. 56(a) on any claim or defense in the case, and the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id.

A party moving for summary judgment bears the initial burden of informing the district court of the basis for its argument that there is no genuine issue of material fact by "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted).  If the moving party meets this initial burden, Fed. R. Civ. P. 56 then obliges the non-moving party to show, via submissions beyond the pleadings, that there are genuine factual issues for trial.  Id. at 324.

There is a genuine issue of material fact only when there is sufficient evidence such that a reasonable juror could find for the party opposing the motion.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986) (explaining further that a mere scintilla of evidence will not suffice). Material facts are those that would affect the outcome of the case under the governing law. Id. at 248.  We may not make credibility determinations or weigh the evidence, and we must draw all reasonable inferences in favor of the non-moving party.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Amour v. County of Beaver, PA, 271 F.3d 417, 420 (3d Cir. 2001).  Our function is to determine whether there is a genuine issue for trial, and

we may not prevent a case from reaching a jury simply because we favor one of several reasonable views of the evidence. Abraham v. Raso, 183 F.3d 279, 287 (3d Cir. 1999) (citing Anderson, 477 U.S. at 249).

We will recite the facts as evidenced by the record in the light most favorable to Murphy, the non-moving party.

### III.   Factual And Procedural History

United insured Murphy's Ford F-150 pursuant to United Policy No. 05900793-4. See Def.'s Statement of Facts at Ex. B. Murphy's policy provided for $300,000 in UIM coverage. Id. at ¶ 3. On October 25, 2011, Murphy was driving his truck when he was seriously injured in a motor vehicle accident. Id. and Pl.'s Resp. Opp. at 2. Murphy's injuries included an L3-4 disc bulge, left shoulder impingement, bursitis, tendinitis and rotator cuff impingement, and a bilateral L4-L5 radiculopathy and nerve root traction injury. Id. Murphy had surgery on his left shoulder to treat these injuries. Id.

Murphy submitted his claim for UIM benefits on May 18, 2012, and four days later his counsel notified United's claims adjuster that Murphy had settled his bodily injury claim against the tortfeasor for $15,000. Id. Murphy then authorized the adjuster to review the medical records in his first-party claim in order to expedite the evaluation of his UIM claim. Id. at 3. The adjuster spent much of the next two years reviewing Murphy's medical records, including records from before the crash, and the adjuster concluded that some of Murphy's medical conditions were pre-existing. Id. at 4. The parties did not discuss potential settlement during 2012 or 2013 as Murphy's medical treatment was ongoing. Def.'s Statement of Facts at ¶ 31.

On June 20, 2014, Murphy's counsel requested that United make a settlement offer or advise why an offer would not be extended. Pl.'s Resp. Opp. at 3. On June 30, 2014, United

responded that it wanted to review the results of Murphy's upcoming independent medical exam ("IME") before making an offer. Id. Murphy was originally scheduled to undergo an IME on August 7, 2014, but he did not attend this appointment. Def.'s Statement of Facts at ¶ 37. He did attend the rescheduled IME on November 11, 2014. Id. at ¶ 38. United reviewed the IME report, and on January 19, 2015 United's claims adjuster estimated Murphy's UIM claim to be worth between $83,000 and $101,000. Id. at ¶¶ 51-53 and Pl.'s Resp. Opp. at 5. That same day, the claims adjuster requested settlement authority to settle Murphy's claim for up to $101,000, Pl.'s Resp. Opp. At 5, and the next day a United supervisor authorized the claims adjuster's request. Id. at 6.

United opened settlement negotiations on February 16, 2015 with an offer of $83,000. Id. On March 13, 2015, Murphy responded with a demand for $250,000. Id. United countered with an offer of $87,000 on April 3, 2015, to which Murphy replied with a demand for $190,000. Id. When replying to United's second offer on April 9, 2015, Murphy's counsel requested that United tender the maximum settlement authority. Id. On April 22, 2015, Murphy's counsel pressured United's claims adjuster to offer the amount of her full settlement authority, to which the adjuster advised, "I HAVE FULL AUTHORITY TO RESOLVE MR. MURPHY'S UIM CLAIM FOR 87,000." Id. Murphy then sued United in state court and United removed here.

**IV.** <u>Discussion</u>

As stated, United moves for summary judgment on Murphy's bad faith claim brought pursuant to 42 Pa.C.S.A. § 8371. Pennsylvania law defines bad faith as "a frivolous or unfounded refusal to pay, lack of investigation into the facts, or a failure to communicate with the insured." Frog, Switch & Mfg. Co. v. Travelers Inc. Co., 193 F.3d 742, 751 (3d Cir. 1999). To recover under a bad faith claim, a plaintiff must show that the defendant (1) did not have a

reasonable basis for denying benefits under the policy, and (2) knew or recklessly disregarded its lack of a reasonable basis for denying the claim. Keefe v. Prudential Property and Cas. Ins. Co., 203 F.3d 218, 225 (3d Cir. 2000) (quoting Terletsky v. Prudential Property and Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1997)). A plaintiff must prove bad faith by clear and convincing evidence. Id. (citing Cowden v. Aetna Cas. & Sur. Co., 134 A.2d 223, 229 (Pa. 1957).

Murphy first asserts that his bad faith claim is sustained by United's unreasonable delay in processing his claim, but we disagree. To be sure, an insurance company's unreasonable delay can be considered a bad faith insurance practice under Pennsylvania law. Thomer v. Allstate Ins. Co., 790 F. Supp. 2d 360, 370 (E.D. Pa. 2011) (citing Ania v. Allstate Ins. Co., 161 F. Supp. 2d 424, 430 (E.D. Pa. 2001)). But, "a long period of delay between demand and settlement does not, on its own, necessarily constitute bad faith." Id. (quoting Kosierowski v. Allstate Ins. Co., 51 F. Supp. 2d 583, 588–89 (E.D. Pa.1999), aff'd, 234 F. 3d 1265 (3d Cir. 2000)). In order for an insured to succeed on a bad faith claim based on an unreasonable delay, he must show that "the delay is attributable to the defendant, that the defendant had no reasonable basis for the actions it undertook which resulted in the delay, and that the defendant knew or recklessly disregarded the fact that it had no reasonable basis to deny payment." Id. (quoting Wiedinmyer v. Harleysville Mut. Ins. Co., No. 94–19450, 1999 WL 1324202 at *215 (Pa.Com.Pl. Aug. 5, 1999)). If the delay is attributable to a need for further investigation or even simple negligence, there is no bad faith. Kosierowski, 51 F. Supp. 2d at 589.

In Thomer, Judge Kelly found that a forty-two month delay between an insured making a claim and the insurer settling the claim did not constitute bad faith. There, the insurer requested additional medical records and scheduled an IME in order to properly evaluate the insured's

claim. Id. at 371-72. Moreover, the insured resisted the insurer's attempts to obtain an IME, further delaying the resolution of her claim. Id. at 372.

Here, we are presented with cognate circumstances. United received notice of Murphy's UIM claim in May of 2012. Over the next two years, United's claims adjuster continued to obtain and review medical records regarding Murphy's ongoing medical treatment. This was especially important given that the claims adjuster reasonably believed that some of Murphy's medical complaints arose from pre-existing conditions. Murphy did not attend an IME scheduled for August 7, 2014. He later attended an IME in November of 2014, and the IME report was made available to the claim adjuster in December of 2014. United then made Murphy a settlement offer on February 6, 2015.

These facts do not evidence an unreasonable delay constituting bad faith. United took steps to thoroughly investigate Murphy's claim, and these steps were reasonable given the peculiar circumstances Murphy's medical conditions presented. Moreover, Murphy's failure to attend an IME scheduled in August of 2014 contributed to United's delay in making a settlement offer. We therefore hold that a reasonable jury could not find that the delay between Murphy's filing of his claim and United's initial settlement offer establishes bad faith.

Murphy also avers that United acted in bad faith when it offered him what he characterizes as a series of unreasonable settlement offers, but we again find no evidence of bad faith. Pennsylvania courts generally have not considered low, but reasonable, settlement offers from insurers to rise to the level of bad faith. See Brown v. Progressive Ins. Co., 860 A.2d 493, 501 (Pa. Super. Ct. 2004) (citing Terletsky v. Prudential Property and Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994)). While some federal courts have held that "low-ball offers which bear no reasonable relationship to an insured's actual losses can constitute bad faith…" Barry v.

Ohio Cas. Group, No. 04-188, 2007 WL 128878, at*8 (W.D. Pa. Jan. 12, 2007), others have found that an insurer may not act in bad faith even when it offers a settlement amount at the lower end of the estimated settlement range. See Thomer, 790 F. Supp. 2d at 375-76 (citing Kosierowski, 51 F. Supp. 2d at 592).

In Barry, the insurer first offered the insured $6,000 to settle a claim -- an amount that was below the estimated value for the UIM claim, which ranged from $7,910.00 to $12,350. 2007 WL 128878, at*2. Within two weeks, the insurer increased this offer to $25,000 -- thereby quadrupling the initial offer to the insured -- despite having received no new information regarding the insured's medical condition. Judge Gibson found that a reasonable jury could rely on these facts in order to sustain a bad faith claim. The insurer in Thomer also made an offer below the estimated value of the insured's claim, offering $30,000 to settle a claim valued between $35,000 and $45,000. 790 F. Supp. 2d at 376. There, in contrast to Barry, Judge Kelly found that an initial offer of $5,000 less than the lowest range of the claim's estimated amount did not amount to bad faith. Id.

This case more closely resembles Thomer than Barry, and in fact the insurer here made a more reasonable offer, when compared to the estimated value of Murphy's claim, than did the insurer in Thomer. United's initial offer to Murphy, presented after a thorough and reasonable investigation, was $83,000. This was at the bottom of the range for the claim's estimated value, which was $83,000 to $101,000, but it was within the range nonetheless. We cannot conclude that a reasonable jury could rely on this information to find in favor of Murphy on his bad faith claim.

Murphy argues that United's actions were made in bad faith because the claims adjuster refused to offer the full amount of her settlement authority, in this case $101,000. He further

7

avers that the claims adjuster attempted to mislead him as to what the full value of her settlement authority was when she wrote in an email to Murphy's counsel that "I HAVE FULL AUTHORITY TO RESOLVE MR. MURPHY'S UIM CLAIM FOR 87,000." We reject both of these assertions. First, Murphy cites, and we have found, no authority to support his position that a claims adjuster is obligated to offer the full amount of her settlement authority. This rule, if it existed, would be absurd on its face and would foreclose any flexibility during negotiations between insurers and those making claims.

Second, we do not read the claims adjuster's email to represent that her offer of $87,000 is the maximum value of her settlement authority. She did, in fact, have full authority to offer $87,000, much like she had full authority to offer anywhere between $83,000 and $101,000. The fact that Murphy's counsel chose to interpret this statement as United stating that $87,000 was the maximum authorized amount does not make it true. Moreover, even if the claims adjuster intended this email to convey that she had no authority to increase her offer, $87,000 was still a reasonable offer. And Murphy, who originally demanded $250,000, and later $190,000, to settle, has provided no evidence that he would have actually accepted an offer of $101,000 in April of 2015. United's hardline negotiating position, which it later softened, is not evidence that a reasonable jury could use to sustain Murphy's bad faith claim.

There is no evidence that United lacked a basis for denying Murphy's claim, especially when Murphy demanded $250,000, later lowered to $190,000, for a claim which United estimated to have had a value of between $83,000 and $101,000. Further, there is no evidence that United knew or recklessly disregarded its lack of reasonable basis for denying Murphy's claim. Murphy has failed to satisfy either prong of Pennsylvania's bad faith test, when he needed to prove both, and we will therefore grant United's motion.

## V.     Conclusion

Murphy's bad faith claim has no merit, as both his unreasonable delay and unreasonable settlement offer theories fail upon close inspection.  We will therefore grant United's motion for summary judgment, enter judgment in favor of United and against William Murphy, and close this case.

BY THE COURT:


_/s/ Stewart Dalzell, J.
Stewart Dalzell, J.